J-S53001-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.J.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: R.C.W., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2185 MDA 2015 |

Appeal from the Decree entered November 30, 2015 in
the Court of Common Pleas of Berks County Orphans'
Court at No(s):  84332

BEFORE:  BOWES, SHOGAN, FITZGERALD*, JJ.

MEMORANDUM BY BOWES, J.:                    **FILED AUGUST 16, 2016**

R.C.W. ("Father") appeals from the November 30, 2015 decree involuntarily terminating his parental rights to his daughter, A.J.W., born in August of 2013.[1]  We affirm and grant counsel's petition to withdraw.

Berks County Children and Youth Services ("CYS") first contacted this family during September of 2013 as a result of Mother's history of drug abuse.  A.J.W. was one month old when the agency opened its file.  On December 13, 2013, Mother gave guardianship of A.J.W. to a friend due to Mother's impending arrest.  On March 25, 2014, the juvenile court placed

_____

* Former Justice specially assigned to the Superior Court.

[1] K.T. ("Mother") relinquished her parental rights voluntarily on December 14, 2015.

A.J.W. into CYS's emergency custody after her guardian was unable to care for her and both Mother and Father were serving prison sentences. On April 2, 2014, the juvenile court adjudicated A.J.W. dependent.

The court ordered Father, who has been incarcerated throughout the juvenile court and orphans' court proceedings, to participate in services including, *inter alia*, parenting education, a mental health evaluation, and a drug and alcohol evaluation. He was also directed to follow the evaluators' recommendations. Father's imprisonment compromised his ability to comply with the juvenile court's directives. During the three successive permanency review hearings following the adjudication of dependency, Father's compliance with the court-ordered services was characterized as moderate, minimal, and minimal, respectively. Furthermore, although Father was initially granted fifteen minutes of weekly visitation with his daughter while Father was incarcerated at the Berks County prison, the juvenile court suspended Father's visitation three months later due to A.J.W.'s "young age, [F]ather's incarceration [at] SCI . . . Somerset, and Father's anticipated continued incarceration." CYS Exhibit 13 at 2.

On July 23, 2015, CYS filed a petition for the involuntary termination of Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b). The orphans' court held a hearing on November 2, 2015. CYS did not present any witnesses. Rather, the agency introduced twenty-one exhibits into evidence without objection. N.T., 11/2/15, at 5. Father

- 2 -

testified from prison by videoconference. During his testimony, Father acknowledged that he has been incarcerated for A.J.W.'s entire life. *Id*. at 10. However, he stressed that, while imprisoned, he participated in beneficial prison programs like parenting and substance abuse classes, and sent his daughter letters, video books, and pictures. *Id*. at 6-8. Significantly, however, Father initiated the prison programs after CYS filed its petition to terminate his parental rights. *Id*. at 30-32.

By decree dated November 30, 2015, the orphans' court terminated Father's parental rights. Father timely filed a notice of appeal and a concise statement of errors complained of on appeal. On January 28, 2016, the orphans' court filed its Rule 1925(a) opinion.

Father's counsel filed a petition with this Court requesting to withdraw from representation and submitted a brief pursuant to ***Anders v. California***, 386 U.S. 738 (1967) and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009).[2] We address counsel's ***Anders*** brief at the outset. ***See Commonwealth v. Rojas***, 874 A.2d 638, 639 (Pa.Super. 2005) ("'When faced with a purported ***Anders*** brief, this Court may not review the merits of the underlying issues without first passing on the request to

---

[2] On April 6, 2016, this Court remanded the appeal to the orphans' court for a determination of whether counsel had abandoned Father on appeal by neglecting to file a brief during the applicable time-period. Counsel filed the petition to withdraw and ***Anders*** brief two days later, and the orphans' court determined that counsel had not abandoned Father.

- 3 -

withdraw.'") (quoting *Commonwealth v. Smith*, 700 A.2d 1301, 1303 (Pa.Super. 1997)). In *In re X.J.*, 105 A.3d 1, 3 (Pa.Super. 2014), this Court "extended the *Anders* principles to appeals involving the termination of parental rights."

To withdraw pursuant to *Anders*, counsel must:

1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [*Anders*] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

*Commonwealth v. Cartrette*, 83 A.3d 1030, 1032 (Pa.Super. 2013) (*en banc*) (citing *Commonwealth v. Lilley*, 978 A.2d 995, 997 (Pa.Super. 2009)). With respect to the third requirement of *Anders*, that counsel inform the appellant of his or her rights in light of counsel's withdrawal, this Court has held that counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights." *Commonwealth v. Millisock*, 873 A.2d 748, 752 (Pa.Super. 2005).

Additionally, an *Anders* brief must comply with the following substantive requirements:

(1) provide a summary of the procedural history and facts, with citations to the record;

(2) refer to anything in the record that counsel believes arguably supports the appeal;

(3) set forth counsel's conclusion that the appeal is frivolous; and

(4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361.

Instantly, counsel filed a petition to withdraw certifying that he has reviewed the case and determined that Father's appeal is frivolous. Counsel also filed a brief that includes a summary of the history and facts of the case, the issue raised by Father, the facts that arguably support the appeal, and counsel's assessment of why the appeal is frivolous with citations to relevant legal authority. Counsel attached to his petition to withdraw a copy of his letter to Father advising him that he may obtain new counsel or raise additional issues *pro se*. Accordingly, counsel complied with the requirements of *Anders* and *Santiago*.

We next proceed to review the issue outlined in the *Anders* brief. In addition, we must "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." *Commonwealth v. Flowers*, 113 A.3d 1246, 1250 (Pa.Super. 2015) (footnote omitted). Counsel's *Anders* brief raises one issue for our review.

1. Did the [orphans'] [c]ourt err by terminating [Father's] parental rights because the evidence presented . . . was insufficient to support the [orphans'] court's decision?

*Anders* brief at 4. CYS counters that it established by clear and convincing evidence the statutory grounds to terminate Father's parental rights and that severing Father's rights would serve A.J.W's best interest.[3]

Our standard of review is as follows:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by § 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, which requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the

_____

[3] Similarly, the guardian *ad litem* filed a brief in support of the decree involuntarily terminating Father's parental rights.

needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted).

We need only agree with the orphans' court as to any one subsection of § 2511(a), as well as § 2511(b), in order to affirm. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). Presently, we find that the certified record sustains the orphans' court's decision to terminate under § 2511(a)(2) and (b), which provides as follows.

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . . .
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2) and (b).

To terminate parental rights pursuant to § 2511(a)(2), the moving party must produce clear and convincing evidence regarding the following elements: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. *See In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa.Super. 2003).

This Court has explained that, "[t]he grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re A.L.D.*, 797 A.2d 326, 337 (Pa.Super. 2002) (citations omitted). Further, parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. *Id*. at 340. A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. *Id*.

In *In re Adoption of S.P.*, 47 A.3d 817 (Pa. 2012), our Supreme Court addressed the relevance of incarceration in termination decisions under § 2511(a)(2). The *S.P.* Court held that "incarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for

termination exist under § 2511(a)(2) where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without essential parental care, control or subsistence and that the causes of the incapacity cannot or will not be remedied." *Id*. at 828.

With respect to § 2511(b), this Court has explained the requisite analysis as follows:

> Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa.Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id*. However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa.Super. 2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *Id*. at 63.

*In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa.Super. 2010).

In this matter, the orphans' court found as follows with respect to § 2511(a)(2).

> At the time of hearing on the petition to terminate his parental rights, Father continued to be incarcerated. A.J.W. was two years old, but Father had not seen A.J.W. in almost a year. Throughout A.J.W.'s placement, Father did correspond with caseworkers and the resource parents. Father testified that he participated in drug and alcohol and other programs while in prison. He testified that in the beginning of his incarceration he maintained contact with A.J.W. by sending books, via video, and in-jail visits. He said that he continued to correspond through letters[,] and that he sends pictures and cards through the foster

family who does respond to him. Father did not explain how an infant or toddler could appreciate and recognize him as a father when he had such minimal contact, yet he asked to delay action on the petition for termination until his release from prison so that he could have the chance to prove he can raise his child.

Father has been charged multiple times over the last 18 years (a fairly regular occurrence during his adult life) with drug-related crimes, assault, harassment and the like. He has received jail sentences ranging in length from 18 to 48 months to 5 to 10 years. His current incarceration is due to a 436 day to 5 year sentence. He anticipates being released in September 2016, almost a full year from the date of hearing in this matter. His maximum date is roughly the end of July 2018. Thereafter[,] he is to serve two years of probation.

Trial Court Opinion, 1/28/16, at 5-6 (footnote omitted).

The certified record supports the court's findings. CYS presented a summary from the Berks County Court of Common Pleas demonstrating that Father was arrested just weeks before his daughter's birth and has remained incarcerated since that date. Father acknowledged that he engaged in the criminal activity resulting in his incarceration even though he knew Mother was expecting his child. N.T., 11/2/15, at 9-10. On October 3, 2014, Father pled guilty to crimes involving the manufacture, delivery, or possession of illegal drugs for which he received 436 days to five years of imprisonment. CYS Exhibit 20. In addition, Father received a two-year sentence of probation.[4] *Id*. Father testified that he anticipated being released from

---

[4] The court summary reveals that Father entered guilty pleas in 1999, 2001, 2006, and 2007 in Lackawanna, Lehigh, and Monroe Counties for crimes
*(Footnote Continued Next Page)*

prison on September 19, 2016, approximately one-year from the November 2, 2015 termination hearing. N.T., 11/2/15, at 6. However, even assuming that Father is released at the earliest date possible, he still will have not had any physical contact with his now-toddler-aged daughter since the juvenile court suspended the fifteen-minute jailhouse visitations during July 2014.

> In addition, the orphans' court reasoned:

> [Father] has not provided or arranged for the provision of "essential parental care, control or subsistence necessary for [A.J.W.'s] physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent" because he still has almost another full year of incarceration left on his sentence if his anticipation is correct. Father's conduct has contributed to the child's removal from parental care and placement with a foster family, and Father simply cannot remedy his situation within a reasonable period of time. A.J.W. will be three years old before Father gets out of prison. A.J.W. deserves better than to be ripped from the only family she knows to be united with the man she does not know at some distant time in the future.

Trial Court Opinion, 1/28/16, at 6.

We discern neither an abuse of discretion nor legal error in the orphans' court's determination that Father's repeated and continued incapacity due to incarceration has caused A.J.W. to be without essential parental care, control, or subsistence necessary for her physical and mental well-being, and that the causes of the incapacity cannot or will not to be remedied. **See In re Adoption of S.P.**, **supra**. Accordingly, we do not

_(Footnote Continued)_ ——————————

involving illegal drugs, disorderly conduct, possession of firearms, and/or careless driving. CYS Exhibit 20.

disturb the court's conclusion that CYS satisfied its evidentiary burden of proving the statutory ground to terminate Father's parental rights pursuant to § 2511(a)(2).

Next, we review the trial court's needs-and-welfare analysis pursuant to § 2511(b).  This Court has emphasized:

> While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
> > [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa.Super. 2015) (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa.Super. 2011) (quotation marks and citations omitted)).  In addition, our Supreme Court stated that, "[c]ommon sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." *In re T.S.M.*, 71 A.3d 251, 268 (Pa. 2013). Moreover, the High Court directed that, in weighing the bond considerations pursuant to Section 2511(b), "courts must keep the ticking clock of childhood ever in mind." *Id*. at 269.  The *In re T.S.M.* Court observed that, "[c]hildren are young for a scant number of years, and we have an obligation to see to their healthy development quickly.  When courts fail . . . the result, all too often, is catastrophically maladjusted children." *Id*.

Instantly, the orphans' court found that A.J.W. "knows no other parental bond than that which she has with [her] foster parents. There is no bond with Father. Termination of Father's parental rights will cause no harm to the child, but rather will give her the chance to fulfill [her] potential in a permanent, healthy, safe environment with proper parenting." Trial Court Opinion, 1/28/16, at 6. As the certified record does not reveal any evidence of a bond between Father and A.J.W., the orphans' court properly concluded that no relationship existed between them. *See In re Adoption of J.M.*, *supra*.

Moreover, in contrast to the child's non-existent attachment with Father, CYS adduced evidence to demonstrate that A.J.W. is closely bonded with her foster family, with whom she has resided since she was approximately seven months old. CYS Exhibit 21 at 12. Indeed, foster parents are the only parents that the nearly three-year-old-child has ever known. Accordingly, the orphans' court did not err in concluding that terminating Father's parental rights will serve the developmental, physical, and emotional needs and welfare of A.J.W.

Finally, our independent review of the certified record revealed no preserved non-frivolous issue that would arguably support this appeal. Therefore, we grant counsel's petition to withdraw and affirm the decree terminating Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(2) and (b).

Petition of Gregory Ghen, Esquire, to withdraw from representation is granted.  Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>8/16/2016</u>